UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

RAMON LOPEZ,

                Plaintiff,

         v.

GEORGE ZOUVELOS, VINY CONWELL,
NEW YORK CITY POLICE DEPARTMENT and
NEW YORK CITY DEPARTMENT OF
CORRECTIONS,

                Defendants.

**MEMORANDUM AND ORDER**
13-CV-6474 (MKB)

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Ramon Lopez, currently incarcerated at Mid-State Correctional Facility, brings this *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants George Zouvelos, Viny Conwell, the New York City Police Department ("NYPD") and the New York City Department of Correction ("DOC") for violations of his and his family's Fourth, Fifth, Eighth and Fourteenth Amendment rights.[1] Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted and his request for a reduction in the filing fee is denied. For the reasons discussed below, Plaintiff's claims against the NYPD and the DOC are dismissed and Plaintiff is granted thirty (30) days leave from the date of this Memorandum and Order to file an amended complaint.

---

[1] This action was transferred to this Court from the United States District Court for the Northern District of New York by order dated November 19, 2013.

I. **Background**

Although he does not name them in the caption of his Complaint, Plaintiff alleges that on or about May 24, 2012, John Doe 1 and Richard Roe 1, of the 83rd Precinct of the NYPD, gave defendant Conwell, a bail bondsman, and his team consent "to go to the plaintiff['s] home, unescorted, and arrest him on their false allegations of an active bench warrant" and "the officers failed to verify the allegations on their up to date system." (Compl. 8.) Plaintiff alleges that "Conwell and his team of 4 individuals invaded the plaintiff['s] parents['] home without a warrant, forc[ed] themselves inside the home, and overpower[ed] the senior citizens, plaintiff['s] parents . . . who were taking care of their grandchildren." (*Id.* at 7.)

Plaintiff states that bail bondsmen Zouvelos and Conwell unlawfully arrested him based on a "non-existent warrant in order to illegally force the cancellation of the bond." (*Id.*) Plaintiff further alleges that officers John Doe 1 and Richard Roe 1 "fail[ed] to send a patrol car with [Conwell] in order to secure the proper protection and safety of everyone." (*Id.* at 8.) According to Plaintiff, John Doe 2 and Richard Roe 2 did not "screen the false paperwork provided by the bondsman nor verify with the Kings County Supreme Court [that] the plaintiff was a fugitive from justice . . . . At the time of the false incarceration the plaintiff was in good standing with the Kings County Supreme Court and a non-fugitive." (*Id.*)

Plaintiff also makes allegations about several separate incidents. Plaintiff alleges that while incarcerated during the summer of 2012, he injured his right knee at the Brooklyn Detention Center due to deteriorated floor mats placed near a basketball hoop. (*Id.*) Plaintiff also asserts that on October 12, 2012, he was retaliated against and assaulted by correction officers (with badge numbers 665, 11511 and 1683) in his cell at Rikers Island, who were sent by Captain Jane Doe 1 to "handle business." (*Id.* at 9.) Plaintiff does not name these officers or

Captain Jane Doe 1 in the caption of his complaint. Plaintiff seeks injunctive and monetary relief. (*Id.* at 17.)

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the court must screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and, thereafter, "dismiss the complaint, or any portion of the complaint," if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A; *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Similarly, the court is required to dismiss *sua sponte* an *in forma pauperis* action, if the court determines that it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas*, 480 F.3d at 639.

### b. New York City Police Department and New York City Department of Corrections

Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter ch. 16 § 396. This provision has been construed to mean that the NYPD and the DOC are not suable entities. *See, e.g.*, *Campbell v. New York City*, No. 12-CV-2179, 2012 WL 3027925, at *2 (E.D.N.Y. July 23, 2013) (dismissing all claims against the NYPD and DOC as non-suable entities); *Thomas v. N.Y.C. Police Dep't.*, No. 12-CV-6327, 2013 WL 431335, at *1 (E.D.N.Y. Feb. 4, 2013) (same); *Richardson v. N.Y.C. Police Dep't*, No. 12-CV-5753, 2013 WL 101403, at *2 (E.D.N.Y. Jan. 7, 2013) ("The NYPD and its divisions, including the Transit Police, may not be sued directly; instead, any suit against a City agency must be brought against the City of New York."); *Johnson v. N.Y.C. Police Dep't*, No. 12-CV-5423, 2012 WL 5607505, at *3 (E.D.N.Y. Nov. 15, 2012) ("New York City departments and agencies, as distinct from the City itself, lack the capacity to be sued. Therefore, any claims against the NYPD are dismissed." (citations omitted)). For this reason, the claims against the NYPD and the DOC are dismissed for failure to state a claim. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

Moreover, to the extent that Plaintiff seeks to impose § 1983 liability upon the City of New York, Plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Dep't of Social Servs. of City of New York.*, 436 U.S. 658, 694–95 (1978); *see Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be

subjected to (3) a denial of a constitutional right." (alteration in original) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Matusick v. Erie Cnty. Water Auth.*, 739 F.3d 51, 82 (2d Cir. 2014) ("[A] municipality cannot be held liable for the conduct of employees under a *respondeat superior* theory . . . . A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." (citing *Monell*, 436 U.S. at 691)). Isolated acts "are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability. . . . On the other hand, such acts would justify liability of the municipality if, for example, they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). "To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* The burden is high as a plaintiff must show conscious disregard as opposed to "mere negligence." *Id.*; *see also Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

Plaintiff did not name the City of New York as a defendant. However, Plaintiff alleges that Officers John Doe 1 and Richard Roe 1 acted pursuant to a "custom or policy" of failing to maintain peace, (Compl. 8), suggesting that Plaintiff intended to assert a municipal liability claim. However, such a bare and conclusory allegation does not show what, if any, wrongful actions the officers took that allegedly resulted in a violation of Plaintiff's constitutional rights,

5

nor does it suggest that the officers acted pursuant to any municipal policy or custom. Thus, Plaintiff has not alleged a plausible municipal liability claim.

### c. Defendants Zouvelos and Conwell

Plaintiff has failed to show that Defendants Zouvelos and Conwell acted under color of state law. In order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). The actions of a private entity may be deemed state action only if "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 52 (citation and internal quotation marks omitted); *see also Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (same). "Whether such a 'close nexus' exists . . . depends on whether the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [action] must in law be deemed to be that of the State." *Sullivan*, 526 U.S. at 52 (citation and internal quotation marks omitted).

Only two courts in this Circuit have considered whether bondsmen, such as Zouvelos and Conwell, acted under color of state law for purposes of § 1983 liability. In *Prousalis v. United States*, No. 06-CV-12946, 2007 WL 2438422 (S.D.N.Y. Aug. 24, 2007), the court recognized that "bail bondsmen have been held to be state actors in certain discrete factual contexts, such as

when making arrests with the assistance of law enforcement officers," but found that the plaintiff had presented no evidence that law enforcement or any government official, "either overtly or covertly," encouraged the actions of the bondsmen at issue. *Id.* at \*16. In contrast, in *Tirreno v. Mott*, 453 F. Supp. 2d 562 (D. Conn. 2006), the court found that police officers acted in concert with several bondsmen where the officers arrived at the plaintiff's home and explicitly told the plaintiff that the bondsmen had "special rights," allowing them to search her home. *Id.* at 564. The court found that the bondsmen were state actors "because they acted together with, and obtained significant aid from, the . . . Police Department." *Id.* at 568.

Here, it is unclear based on Plaintiff's allegations whether bail bondsmen Zouvelos and Conwell acted under color of state law because Plaintiff's allegations are too vague and ultimately insufficient to establish plausible state action. Plaintiff only alleges that Officers John Doe 1 and Richard Roe 1 gave Conwell and his team "consent" to go to Plaintiff's home and arrest him. (Compl. 8.) Without more factual allegations showing that Zouvelos and Conwell were working closely with law enforcement, Plaintiff's allegations against Conwell and Zouvelos fail to state a valid § 1983 claim.

### d. Representation of Others by a *Pro Se* Litigant

Plaintiff claims that Officer John Doe 1 and Richard Roe 1 gave consent to Conwell to arrest Plaintiff and then failed to send a patrol car, resulting in the unlawful imprisonment of Plaintiff, unauthorized photographs of Plaintiff's two underage nieces and the "hostile takeover" of Plaintiff's brother's vehicle. (*Id.*) Plaintiff's allegations concerning the photographs of his two underage nieces and his brother's vehicle, to the extent Plaintiff is attempting to assert a claim based on these facts, cannot be pursued by Plaintiff, because Plaintiff, as a layperson, lacks the ability to bring claims on behalf of his nieces or brother. *See Guest v. Hansen*, 603 F.3d 15,

7

20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."); *KLA v. Windham Se. Supervisory Union*, 348 F. App'x 604, 605–06 (2d Cir. 2009) ("Although litigants in federal court have a statutory right to act as their own counsel, 28 U.S.C. § 1654, the statute does not permit unlicensed laymen to represent anyone other than themselves." (citation and internal quotation marks omitted)); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause . . . . For example, a lay person may not represent a corporation or a partnership or appear on behalf of his or her own minor child."); *Johnson v. Fischer*, No. 13-CV-0348, 2013 WL 6816608, at *3 (N.D.N.Y. Dec. 20, 2013) (noting that a plaintiff could not bring suit on her father's behalf); *see also Barrett v. United States*, 622 F. Supp. 574 (S.D.N.Y. 1985) ("[S]ection 1983 civil rights action is a personal suit and may not be brought by a relative, even the parents . . . or spouse or children of the individual whose civil rights were violated." (citations and internal quotation marks omitted)). Therefore, any and all claims brought on behalf of others are dismissed.

### d. Filing Fee

On January 17, 2014, Plaintiff requested a reduction in the required filing fee. (Docket Entry No. 8.) Section 1915 states that a prisoner bringing a civil action, notwithstanding an *in forma pauperis* designation, shall be required to pay the full amount of a filing fee. § 1915(b)(1). Although the Court recognizes the hardship this presents Plaintiff, it lacks the discretion to grant Plaintiff's request. *See Singletary v. Tomarken*, No. 13-CV-04727, 2013 WL 5302201, at *1 n.1 (E.D.N.Y. Sept. 19, 2013) ("In 1995, Congress passed the Prison Litigation Reform Act ('PLRA') in an effort 'to reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees.'" (quoting

8

*Leonard v. Lacy*, 88 F.3d 181, 185 (2d Cir. 1996))); *Gasaway v. Perdue*, No. 11-CV-01272, 2012 WL 1952644, at *2 (N.D.N.Y. May 30, 2012) ("a party proceeding *in forma pauperis* is required to pay the full $350.00 filing fee"); *Morgan v. Baker*, No. 08-CV-713, 2008 WL 4831414, at *1 (D. Conn. Nov. 5, 2008) ("The federal statute states that any prisoner filing a civil action must pay the full filing fee.").

### III. Conclusion

The case is dismissed with prejudice against the NYPD and the DOC pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is granted leave to amend the Complaint to replead his claims against Zouvelos, Conwell and any other individuals Plaintiff can factually show violated his constitutional rights while acting under color of state law. If Plaintiff intends to pursue a claim based on municipal liability, he may add the City of New York as a defendant if he believes he has facts to allege a plausible claim. The amended complaint must be filed within thirty (30) days of the date of this Memorandum and Order. Plaintiff is advised that any amended complaint he files will completely replace the original complaint. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order. If Plaintiff fails to file an amended complaint within thirty (30) days, the Court shall dismiss this Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

No summons shall issue at this time and all further proceedings shall be stayed for thirty (30) days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 269 U.S. 438, 444–45 (1962).

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 4, 2014
      Brooklyn, New York