# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **Ramon Lopez** | § | |
| **Plaintiff,** | § | **INDEX No.** |
| | § | |
| v. | § | **1:13-cv-06474-MKB-JO** |
| | § | |
| **George Zouvelos, Viny Conwell,** | § | **CIVIL ACTION** |
| **and the City of New York** | § | |
| | § | |
| **Defendant(s).** | § | |
| | § | |

PRO SE OFFICE

**TO THE HONORABLE COURT:**

**PLEASE TAKE NOTICE,** that the undersigned, George Zouvelos, Defendant, *pro se*, will apply to the above court at the United States Court House at United States District Court Eastern District of New York 225 Cadman Plaza East Brooklyn, NY 11201, on a date and time to be set by the Court, for an Order:

    **A.** Dismissing the complaint in this matter, with prejudice, pursuant to FRCP Rule 12 (b)(6), and;

    **B.** that this Court grant such other and further relief this Court deems just and proper.

On the following grounds: The basis for the within application is set forth in the accompanying Affidavit, and the Exhibits annexed hereto.

**Dated:** November 3, 2014
             Brooklyn, New York

                                 Respectfully submitted,

                                 George Zouvelos
                                 Defendant, *pro se*
                                 75 Smith Street
                                 Brooklyn, NY 11201
                                 (917) 279-6321

To:    Plaintiff:
        Ramon Lopez, Prison Inmate # 12-R-3146
        Marcy Correction Facility
        9000 Old River Road, P.O. Box 3600,
        Marcy, New York 13403


To:    ZACHARY W. CARTER
        Corporation Counsel
        of the City of New York
        *Attorney for Defendant City*
        100 Church Street, Rm. 3-176
        New York, New York 10007
        (212) 356-3535
        Attn: DAVID COOPER, ESQ.
        Assistant Corporation Counsel

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK



| | |
|---|---|
| Ramon Lopez | § |
| § | |
| Plaintiff, § | INDEX No. |
| § | |
| v. § | 1:13-cv-06474-MKB-JO |
| § | |
| George Zouvelos, Viny Conwell, § | CIVIL ACTION |
| and the City of New York § | |
| § | |
| Defendant(s). § | |
| § | |

### Defendant, *Pro Se* George Zouvelos' Affidavit and Points of Law in Support of Motion to Dismiss Pursuant to FRCP Rule No. 12 (b)(6)

GEORGE ZOUVELOS, BEING DULY SWORN DEPOSES AND SAYS:

**1)** Respectfully, *pro se* defendant, George Zouvelos, (Zouvelos) submits the following affidavit, points of law and exhibits in support of the within my motion to dismiss the complaint in this matter, pursuant to FRCP Rule 12 (b)(6).

### Preliminary Statement

**2)** I was the private bail agent/obligor who on December 8, 2011 caused the posting of a bail bond in the amount of $100,000.00 running to the benefit of criminal defendant, Ramon Lopez, (hereinafter "Plaintiff").

**3)** Later on, I was the private individual/obligor who authorized the private contractually authorized lawful investigation, search, location, re-arrest and surrender to jail of Plaintiff.

**4)** The private contractual authority that empowered me to execute these actions are clearly set forth in my private bail contract/indemnity agreements, and are further explained herein. These private agreements were fully executed by all of Plaintiff's private contractual indemnitors prior to bail posting; and, by Plaintiff himself after he was released from penal custody and control.

5) The authority that enabled me to execute my private contractual/ indemnity agreements are pursuant to NY CPL § 520.20(4)(ii), common and case law. These contractual conditions agreed to by all are contained in my statutory disclosures made to the Court in my "Bail Affidavit", and "Undertaking to Answer" at the time of bail bond posting. The procedures to surrender a criminal defendant out on bail are as defined in NY CPL § 530.80; and also as defined in common and case law. The aforementioned bail application that was submitted to the Court for Plaintiff's jail release contained mandatory disclosures which were reviewed, approved and then so-ordered by a Judge of the New York State Court. There was no "state action" as will be fully explained herein.

6) The Plaintiff is mistaken-- I never operated a business in the name "NYC Pay Bail". No such entity ever conducted business relating to Plaintiff's complaint or the posting of his bail bond. As my exhibits will illustrate, Plaintiff's contractual indemnitors did business the bail bond business with me, George Zouvelos.

### Co-Defendant "Viny Conwell"

7) For the Court's information, co-Defendant "Viny Conwell", is actually, Vincent ("Vinny", "Vinnie", "Big V") Conwell (hereinafter "Conwell") of Suffolk County New York. Conwell does not, and did not conduct his business out of my address location. Conwell was never a partner or owner in any entity which I operate(d).

8) Conwell was a "body-man", one of several authorized to assist me in the lawful private bounty hunt, search, locate, re-arrest and transport Plaintiff back to jail pursuant to private bail contract / indemnity agreements, indemnitor and criminal defendant re-arrest authorizations, and as defined in NY CPL § 530.80.

9) I was not, and am not a partner, nor do I have any financial interest in Conwell's business, or any other entity he may own, operate or be involved with. Conwell is an independent contractor that operates his own business.

10) This Court initially dismissed Plaintiff's original complaint, *"Plaintiff's allegations against Conwell and Zouvelos fail to state a valid § 1983 claim."... "Plaintiff is granted leave to amend the Complaint to replead his claims..."... "...can factually show violated his constitutional rights while acting under color of state law."*

**11)** However, in Plaintiff's amended complaint, he did not provide any new evidence or case law to back his § 1983 claim.  Instead, Plaintiff only continues to regurgitate his original pleadings while again casting aspersions on me, my actions, integrity, motives, bail operations, designees and lawful contractual authority to re-arrest him as the sole basis for his § 1983 claim.

## The Court Knows That Conjecture, Hearsay and "Ignorant to the Law Editorializations", Are Not The Law of This State

**12)** As the president of the New York Professional Bondsmen and Agents (the NYPBA), its principle lobbyist, and while currently maintaining a nationally Certified Bail Agent Certification (CBA), I am well versed in all facets of the bail and relevant law(s), and specifically in the State of New York.  As such, and on occasion, I am confronted by a judicial officer who may make a disparaging and / or highly prejudicial "seeming" commentary based on mere *prima facia* submittals that may reference unrelated editorialized tabloid article(s) etc. and / or any ongoing legal matter(s) that may be pending before another Court.  Unfortunately, these can form the basis for an initial "adverse" first impression and / or opinion, absence the facts, documentary evidence, and the Court review of existing laws.

**13)** As president of the NYPBA, it is often made clear to me that the laws, rights and powers of the bail agent in New York are highly misunderstood or simply unknown to most Judges, some legislators, certain regulators and nearly all in the news media.  This fact has often permitted unrelated and prejudicial exhibits and unsubstantiated allegations, such as the ones Plaintiff submitted, to initially poison the reader.  I will clearly set forth herein the relevant statutes in order to provide the context, and a well educated perspective as it relates to New York bail bondsmen and the bail and related laws.

**14)** Moreover, I am compelled to address **all** of Plaintiff's "published" yet, unsustainable, unfounded and unsupported allegations.  Respectfully, by providing this Court the undisputed facts and the documentary evidence it will be self evident that the Plaintiff's 1983 claims, as it relates to me,  are not only meritless, but warrant dismissal with prejudice.

### The Facts, Circumstances & Events in Context Surrounding Criminal Defendant, Now Plaintiff and Inmate Ramon Lopez

**15)** This § 1983 action, as it pertains to me and my designees, arises from the lawful posting of a bail bond and subsequent lawful and private contractually authorized investigation, search, re-arrest, surrender to jail and bail exoneration of the Plaintiff.

**16)** On December 8, 2011, I duly caused the posting of Plaintiff's bail bond, utilizing a power of attorney of the North River Insurance, surety, (hereinafter "TNR"), No. T300-50306503, in the penal amount of $100,000.00 (one hundred thousand dollars). Plaintiff and his contract indemnitors executed my enforceable and binding private bail contracts/indemnity agreements.

See, International Fidelity Insurance co., v. City of New York, 263 F. Supp. 2d 619, No.CV-00-0693 ( U.S.D.C., E.D. N.Y. 2003): *"Generally, defendants, or their indemnitors, do not deal directly with the surety, but rather deal with a bail bondsman (also referred to as a producer or retail seller of bail). "..."...authorizes selected bail bondsmen to act as its agents by giving them power of attorney to sign a particular bond for a certain amount."*

### The Licensure to Post Bail Bonds: and The New York State Regulatory Bail Scheme

**17)** After the execution of the private bail contract, and prior to posting the bail bond, I received the statutory premium in the amount of $6,260.00 for the *"giving of bail"*, pursuant to New York Insurance law § 6804. After I paid the surety for use of the bond, and the posting expenses, I maintained $3,740.00 for the *"giving of bail"*.

**18)** Pursuant to Insurance law § 68 for the *"giving of bail"*, a duly licensed professional bail agent must tender the statutory premium, to approach the Court to post the bail bond, all which fully occurred in this matter. The New York State Department of Financial Services (hereinafter "NYDFS") regulatory purview and jurisdiction over New York professional bail agents, bail sureties and cash depositor of bail is as clarified by NYDFS' (OGC) Office of General Counsel Legal Advisory No. 04-11-22, dated November 29, 2004, See Exhibit **"A"**, which states in part:

*"The Department, under N.Y. Ins. Law Section 6802 (McKinney Supp. 2004), licenses*

*bail bondsmen doing business in New York, but neither the statute nor its implementing regulation, Regulation 42, N.Y. Comp. Codes R. & Regs. tit. 11, Part 28 (2004) extend beyond licensing, record-keeping and compensation. They do not address private agreements that either bail bondsmen, or insurers, may enter into with those who put up the collateral for a bail bond."... "It would be advisable for the inquirer to review the terms of the collateral / indemnification agreement under which the deeds in question were submitted as surety for the bail bond..."... "Please note that such agreements are not insurance contracts, as defined by N.Y. Ins. Law Section 1101, and are not governed by the New York Insurance Law."*

19) Therefore, all aspects of the private contractual / indemnity conditions were in full accord with the surety's requirement, bail agent / obligor mandates, and in full and justifiable reliance of the New York Criminal Procedure, Contract, Insurance, Contract and Common laws(s).

### The "Security Placed on Deposit" to Partially Secure the Bail Bond

20) Separate from promises made in the bail contract / indemnity agreement, confession of judgments and promissory notes (all private contractual documents), I secured a car title, *to wit;* a used a 2006 FX35, Vehicle Identification number (VIN) No. JNRAS8W36X201818. Although, I permitted the indemnitor to maintain physical custody and control over the vehicle (Security), I held the vehicle's title which was signed. I also received $1,990.00 (one thousand nine hundred ninety) in security cash which I placed on deposit with the TNR surety, which was subject to the terms and conditions of the private bail contract. See Exhibit "B", a "Receipt for Security Collateral", signed by the depositing indemnitor, David Lopez---who is not a party to this action.

### The Criminal Charges of Criminal Defendant, Lopez (Plaintiff)

21) At Plaintiff's criminal court arraignment, a Judge of the Criminal Term had assessed Plaintiff's flight risk and set a $100,000.00 bail bond for his release from penal custody. The serious felony crimes for which Plaintiff was arrested, charged and indicted are annexed in Exhibit "C", "E-courts" official "Webcrims", were as follows:

1) 9 Counts D Felony(s) NY PL 130.65 .01 Sexual Abuse Forcible Compulsion.

2) **9** Counts A Misdemeanor(s) NY PL Law 130.52 00 Forcible Touching.

3) **5** Counts A Misdemeanor(s) NY PL 135.05 00 Unlawful Imprisonment.

4) **9** Counts B Misdemeanor(s) NY PL 130.55 00 Sexual Abuse in the 3rd Degree.

5) **6** counts NY PL 240.26 01 Harassment with Physical Contact.

**22)**   The bail bond which was subsequently posted required Plaintiff's **timely** appearance, *to wit*: 9:30 AM, in court, and for **every** court date. In addition, Plaintiff's strict adherence to private contractual terms and conditions which included, but were not limited to, strict monitoring of his community supervised release with physical reporting to my offices on a weekly basis; and, for each and every court date. During Plaintiff's physical check-in to my office, he would be interviewed, and we would thoroughly re-review Plaintiff's criminal case(s) and activity; verify all contractual information and circumstances. The crucial "check-in" contractual requirement was as disclosed and approved by the Court in my Bail Affidavit, dated December 8. 2011, pursuant to NY CPL § 520.20 (4) (ii).

In International Fidelity Insurance co., v. City of New York, 263 F. Supp. 2d 619, No.CV-00-0693 (U.S.D.C., E.D.N.Y. 2003) it states: *"When the court fixes bail, the criminal defendant may submit a bail bond in full satisfaction of the bail amount set by the court; the bail bond is a contract between three parties: the defendant, the surety, 625*625 and the State.[5] The surety may also receive a bail affidavit from the criminal defendant or an indemnity agreement and confession of judgment from a third party as collateral against any loss on the bond."*

**23)**   As set forth herein, and as demonstrated by my documentary exhibits, Plaintiff had an absolute duty to comply with Court orders, as well as each and every term and condition of the private bail contract / indemnity agreement he executed together with his indemnitors. Plaintiff and his contractual indemnitors also initialed each and every paragraph thereof acknowledging they read, understood and agreed with same.

### The Bondsman's and Public's Justifiable Reliance on Ecourts and Webcrims

**24)**   In his amended complaint, Plaintiff submits inaccurate and false allegations. He also submits information contained on the State operated E-courts/ Webcrims database to "support" his allegations.

**25)**   I have extensively researched the law in New York State regarding the "Webcrims" issue

raised in this matter. The New York State Unified Court System (OCA) maintains an official internet 'Webcrims' public information portal. As the Court is aware, Webcrims' is maintained by the New York State Office of Court Administration (OCA): *https://iapps.courts.state.ny.us/webcrim attorney/ AttorneyWelcome*), and is justifiably relied upon by legal professionals, the public, and even the Courts themselves.

26)   In fact, the New York Courts routinely take "judicial notice", as well as attorneys, defendants, litigants, New York Professional Bail Bondsmen, Bail Insurance companies and the public, who all justifiably rely upon the entry of and accuracy of the information contained therein.

27)   This was clearly stated in <u>Matter of Matza v. Oshman, Helenstein & Matza</u>, 2011 NY Slip Op 30256 (U) (Sup. Ct. New York Co 2011) which states in part as follows:

  *"E-courts is the official site maintained by the New York State Unified Court System. As the referee correctly stated, he was entitled to take judicial notice of public State records maintained and accessible on the internet."*

28)   The <u>Matza</u> Court also affirmatively stated that: *"... it cannot be contested that E-courts is the official site maintained by the New York State Unified Court System. Thus, the Referee entitled to take judicial notice of public State records maintained and accessible on the internet (see, <u>Cywek v. Mahoney</u>, 39 N.Y. 2d 159 (1976), "Data culled from public records is, of course, a proper subject of "judicial notice." See also, Transtechnology Corp., v. Assessor, 71 AD 3d 1034 (2d Dept. 2010), taking judicial notice of the, New York State Unified Court System E-courts public website. See also, <u>Miller v. Mace</u>, 14 AD 3d 1442, (3d Dept. 2010) stating that the Court can take judicial notice of computerized Court records).*

29)   In a recent New York case involving a New York City issued bail bond and court appearances (see, <u>Elaine Bailey v. Marvin's Bail Bonds</u>, 2013 NY Slip Op 50742 (U), Civ. Ct. Kings Co., May 14th 2013) the Court utilized the 'Webcrims' electronic docket sheet as proof of *'Bail Forfeiture/BW Ordered Stayed'* in determining the facts relating in that underlying case. [See also, New York Law Journal "Technology Benefits Court Administration", Chief Administrative Judge Ann Pfau, May 3, 2010, where the Chief

Judge specifically stated that, "*Webcrims lets users view information about pending criminal cases in local and Supreme Courts in 13 Counties, as well as summons cases for all of New York City.*"

### The Posting of the $100,000.00 Bail Bond That Benefited Plaintiff

**30)**   Pursuant to NY CPL § 520 a Judge of the New York State Supreme Court, Criminal Term, reviewed my disclosures and the terms and conditions as contained in my bail application. These were comprised of my "Bail Affidavit", "Undertaking to Answer" and "Power of Attorney". These statutorily mandated documents contain conditions for releasing Plaintiff from penal custody. After the Court approved my bail application Plaintiff was then released from penal custody and into my contractual custody. See, a true copy of the Judge signed "Power of Attorney" "Bail Affidavit", "Undertaking to Answer" and the Court issued release order (cut-slip) Exhibit **"D"**.

People of the State of New York v. Public Service Mutual Insurance, 37 N.Y. 2d 606, Court of Appeals of the State of New York. (1975), states in part:

*"In return for the State's release of the defendant from jail, the surety has pledged itself to assure the return of the defendant to court. There is a moral obligation on the part of the surety to fulfill its promise. A surety's pledge should not be lightly given; the bondsman must be held accountable for failure to fulfill the promise that the defendant will appear."*

### The Courts Recognition of Surety's, Bail Agents & Obligors Private Contracts

**31)**   After his arrest and arraignment, Plaintiff's contractual indemnitors requested me to post the $100,000.00 bail bond. At that time, the indemnitors read, initialed each paragraph, and then executed the private bail contract/indemnity agreement, together with authorizations, performance guarantees, instruments of indemnity and promise. See, Exhibit **"E"**, Bail Contract / Indemnity Agreement (originally printed on legal size paper). In addition, each indemnitor and the Plaintiff also executed confessions of judgment and promissory notes. The documents were thoroughly explained to the indemnitors, and after his jail release to the Plaintiff.

**32)**   There was no request for me to waive or modify the private bail contract "sign-in"

reporting and / or other requirements. The indemnitors, and later Plaintiff, asked for no modifications and contractually agreed that Plaintiff would and could strictly comply with my community monitoring of him, and for each and every term and condition of the bail contract/indemnity agreement contained in Exhibit "E".

a) The Court's attention is respectfully drawn to an independent seven year study conducted by VERA Institute of Justice (CJA), in New York City called, *Bail Bond Supervision Report On Intensive Pretrial Supervision*, August 1995, which will be further detailed herein, found that:

*"Regular communication between program staff and outside service providers or family members promotes better supervision. At base, release monitors need to know the whereabouts of those individuals under their charge..."* (Report page No. 13),

**33)** In the last paragraph of my bail contract, all indemnitors, and Plaintiff, acknowledged receiving a copy of the contractual documents. All were fully advised.

**34)** New York Federal District Court Senior Judge Sifton correctly stated in, <u>International Fidelity Insurance co., v. City of New York</u>, 263 F. Supp. 2d 619, No.CV-00-0693 ( U.S.D.C. E.D. N.Y. 2003):

*"Bail bondsmen prepare papers that are filed with the courts and monitor the defendant to ensure his return to court when required.[7] [7] Bail bondsmen generally monitor a defendant by requiring the defendant to report in regular intervals, making certain that defendant understands when he is required to be in court, and by taking custody of documents, such as defendant's passport, that would enable the defendant to flee."*

*"The contract between the surety and the State is reflected in a state-approved form document entitled the "Undertaking of Bail." IFIC's limited power of attorney to its bail bondsman is generally attached to and made a part of the Undertaking of Bail."*

In the Brooklyn Law Journal of Law and Policy, "None of Their Business", Vol. 9, Issue 1, 2010:

*"But bondspersons do not solely rely on their powers of arrest; rather, they employ a variety of ways to minimize the risk of flight. Such practices include maintaining contact with clients by*

*phone, mail, and personal visits, as well as requiring third parties (usually close to the defendant) to co-sign and put up collateral for the defendant's release."*

In the Wilson Quarterly, 2011, *"The Bounty Hunter's Pursuit of Justice"*, author and Professor, Alexander Tabarrok, writes: *"A typical application for a bond, for example, requires information about the defendant's residence, employer, former employer, spouse, children (along with their names and schools), spouse's employer, mother, father, automobile (including description, tags, and financing), union membership, previous arrests, and so forth. "Bail bondsmen monitor defendants, guide them through the court process, and help them show up for trial."...."Bail bond firms are often small, family-run businesses—the wife writes the bonds and the husband, the "bounty hunter," searches for clients who fail to show up..."*

### Bail Bond Posted; Plaintiff Released in the Contractual Custody of Zouvelos

**35)** After the bail bond and its conditions were approved by the Court, Plaintiff was released from jail and appeared in my office, as contractually required. At the office, we interviewed Plaintiff, and then he reviewed the contractual information of his indemnitors; added and / or amended his own pertinent disclosures and information; and then executed the bail contract/indemnity agreement, and authorizations—his photo(s) were taken.

**36)** Plaintiff understood and agreed to the terms and conditions. He signed the documents and initialed each paragraph. Plaintiff affirmed orally, and then in writing, that he understood and would be fully compliant. Plaintiff did not seek, nor ask for any contractual modifications, additions or deletions. See Exhibit **"E"**. The terms, conditions and responsibilities for Plaintiff's release on the posted bail bond were thoroughly explained to him, as were the ramification(s) of his failure to comply. Plaintiff also executed additional and necessary contractual documents. See Exhibit **"F"**.

**37)** Plaintiff, as well as his contract indemnitors were all in full understanding and concurrence when entering into private and binding contractual / indemnity agreements acknowledging that I and my designees are acting under private contractual authority.

**38)** In his amended complaint, Plaintiff mistakenly seeks to categorize me and my designees as acting "under color of state law", but, as will be demonstrated herein, that is not only

implausible, but impossible in this matter.

**39)**   See, <u>People v. Pub. Serv. Co.</u>, 37 NY 2d 606 - NY: Court of Appeals (1975): *"When bail is accepted by the State in lieu of the defendant's physical incarceration, the defendant is in effect remanded to the custody of the surety.* (<u>Taylor v Taintor, 16 Wall [83 US] 366, 371</u>.)"*, See also, The Supreme Court in the case of <u>Taylor v. Taintor</u>, 16 Wall. 366, 371, 21 L. Ed. 287, stated in part:

*"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner."*

**40)**   The Court in <u>Fitzpatrick v. Williams</u>, 46 F.2d 40, 42 (5th Cir. 1931), stated in part:

*"…(the surety's right over the principal was "'an original right that arises from the relationship between the principal and his bail, and not one derived through the State'"… "[6] In most of the cases which do not find bondsmen to be state actors, bondsmen are the only defendants and no law enforcement officers are charged. Cf. <u>Green v. Abony Bail Bond</u>, 316 F. Supp. 2d 1254, 1260-62 (M.D. Fla. 2004); <u>Hunt v. Steve Dement Bail Bonds, Inc.</u>, 914 F. Supp. 1390, 1391 (W.D. La. 1996). But see <u>Ouzts v. Md. Nat'l Ins. Co.</u>, 505 F.2d 547, 555 (9th Cir. 1974) (holding bondsmen are not state actors because they are "in the business in order to make money"); <u>Thomas v. Miller</u>, 282 F. Supp. 571, 573 (E.D. Tenn. 1968) (no relevant discussion). The United States District Court for the District of Kansas harmonized Ouzts with cases finding state action in <u>Bailey v. Kenney</u>, 791 F. Supp. 1511, 1523 (D. Kan. 1992)."*

**41)**   <u>Jennings v. Robert Abrams</u>, Attorney General of the State of New York, No. 83 Civ. 2961-CLB. U.S.D.C. , (S.D.N.Y. 1983) stated in part:

*"A person on bail remains under restraint as to his bail limits. In effect he has merely been transferred to a larger jail. The New York Court of Appeals has held that "[w]hen bail is accepted by the State in lieu of the defendant's physical incarceration, the defendant is in effect*

*remanded to the custody of the surety."*

**42)**  In <u>Carlson v. Landon</u>, 342 U.S. 524, 547, 72 (S. Ct. Ed. 547 1952) the court stated in part:

*"When a prisoner is out on bond he is still under court control, though the bounds of his
confinement are enlarged.  His bondsmen are his jailers."*

**43)**  In addition, in Exhibit "E" page No. 1, the binding private agreements executed among all
parties contains a binding arbitration clause which prohibits court action and that any
claim must be determined by and through binding arbitration.

**44)**  As such, and respectfully, the Court, by agreement of the parties, does not have subject
matter jurisdiction over mere monetary disputes, as these disputes are quickly and
expediently handled through cost efficient arbitration.  It has been years since Plaintiff
was re-arrested and taken back to jail, and no arbitration was ever taken advantage of or
initiated relating to this matter.

**<u>Plaintiff's Material Breach(s) of Contract Leading to His Lawful Search,
Re-Arrest, and Surrender to Jail</u>**

**45)**  It is indisputable that Plaintiff agreed by contract, and was court-ordered, to physically
appear in my office to physically check-in each week, and after each and every court date.
He also agreed to live at the address on file; lead a law abiding life; be forthright and
forthcoming with any change of contractual information and circumstance; and, not under
any circumstance, get a warrant or cause a bail bond forfeiture.

**46)**  These are all standard clauses contained in private bail contract and indemnity
agreements, as well as longstanding common standards and practices in the New
York State commercial bail bond industry, as will be further set forth herein.

**47)**  A sign-in log was kept each and every time Plaintiff appeared for his weekly and court
date physical check-in(s).  See Exhibit "G".  No check-in by telephone was authorized.

**48)**  At every required check-in (Plaintiff actually made), questions were posed to him relating
to contractual information; any change of circumstance; his continued relationship with
his indemnitors; any contact with law enforcement; and, information was updated, and

then verified as necessary.  During his check-in, we would advise Plaintiff of his next court date utilizing E-courts/ Webcrims, and scan databases for new and existing criminal activity relating to jail stays, court dockets and police contact.  If questions or any discrepancy existed for any of the information disclosed by Plaintiff, and / or discovered therein, we would contact the Court or agency to receive clarification and /or verification. When material breeches of contract occurred, the file would be reviewed by me. The aforementioned are my standard operating procedures, and for the thousands of criminal defendants I bonded from jail, which included Plaintiff.

49) For example, when Plaintiff failed to check-in during the week ending May 18, 2012 my office contacted the court and it was verified that Plaintiff's next court date was May 21, 2012, as stated on E-courts/Webcrims.

50) Outreach to defendant and his indemnitors failed to yield any information on Plaintiff's whereabouts, nor did it result in any excuse for his contractual breeches, and his purposeful absence.  It was later confirmed that Plaintiff was not in jail, confined to any institution or hospitalized.  In addition, no telephone call, letter or electronic notification was made by Plaintiff or his indemnitors to me or my office.  I then, with my crew, conducted surveillance of Plaintiff's contractually acknowledged "home residence".  At that time, Plaintiff could not be contacted by telephone, his indemnitors did not know his whereabouts, and Plaintiff was not observed going in or out of the address we had on file. These facts alone heightened suspicions that the bail bond was in further jeopardy.

51) On May 21, 2012, the criminal defendant failed to physically check-in with me again, and for his Court date check-in.  The Court was contacted and I was advised that Plaintiff had **failed to appear** (FTA) for his court date.

52) The Court further advised me that a *"Bench Warrant"* was issued and that my $100,000.00 bail bond was *"Forfeited"*.

53) The United States Supreme Court has held:

*"...that a violation of law is '"not the act of law"' that causes a defendant to miss a court date but rather an "act of [the] defendant[,]" Taylor v. Taintor, 83 U.S. 366, 369-71, 16 Wall. 366, 21 L.Ed. 287 (1872).*

**54)**   Aside from these material breeches of the bail contract, we also did not receive any cooperation or any further information from Plaintiff or his contractual indemnitors. I then authorized a lawful search and re-arrest of Plaintiff. A $100,000.00 forfeiture was at stake for which I was responsible to mitigate any and all potential loss on behalf myself, corporate surety, and the financial interest of the indemnitors, even though the indemnitors were uncooperative.

**55)**   Plaintiff's sign-in log speaks for itself. It proves that Plaintiff alone is to blame for the events that which led to his lawful re-arrest and bail bond exoneration. Plaintiff, through his own actions was the sole cause for his own arrest and re-arrest. Therefore, searching, re-arresting and surrendering Plaintiff was not only reasonable, but fully justifiable.

**56)**   Contrary to what Plaintiff alleges in his complaint, actions taken pursuant to the private bail contract in order to safeguard the $100,000.00 bail bond were not an epiphany to anyone---they were exactly as contractually promised, and as agreed to by all indemnitors and Plaintiff himself.

**57)**   These private contractual covenants and actions relating to same cannot be construed as being in violation of Plaintiff's § 1983 rights; unlawful; nor were they inappropriate, hasty, arbitrary, capricious, unreasonable, unexpected, uncommon, and / or discriminatory in any manner.

**58)**   It is clear that Plaintiff totally fails to take into account that his private bail contract releasing him from jail was with his private bail agent (me); backed by the contractual promises of his indemnitors; and, not with the Court or any government agency. That this private contractual relationship fully governed his pretrial release by bail bond. See, Lee v. Thorpe, 147 P.3d 443 (2006, Sup. Ct. Utah), "...*parties to a contract regarding the subject matter of that contract, the contractual relationship controls and the parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed on.*"

**59)**   See the Court findings in, Dottore v. the Huntington National Bank, (Dist. Court, ND Ohio 2014), stated in part as follows:

*"When parties reduce their relationship and obligations to a written contract, there is generally no independent duty of care. Consequently, "when the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract." Id. at 631 (quotations omitted).... "Having already established that the parties' had a contractual relationship, Plaintiff cannot recover purely economic losses under a tort theory of liability."*

**60)** Moreover, and as stated herein, neither I, nor my designees could ever be accused or held accountable for purportedly acting as *"an arm of the court," and / or* as "state actors". See, <u>Ouzts v. Maryland National Insurance Co.</u>, 505 F.2d 547, Ninth Circuit (1974):

*"In <u>Warren v. Cummings</u>, 303 F.Supp. 803 (D.Colo.1969), the court rejected precisely this argument saying, "Plaintiff's contention that defendant Robertson acted under the color of state law is grounded, in part, upon Robertson's identification of himself as some sort of law enforcement officer, even though Robertson was not, in fact, any type of officer. This basis is clearly insufficient. The Civil Rights Act requires some vesting of authority by the state, and defendant's self-proclaimed authority will not suffice." Id. at 804.*

*"We note only one other contention made by the appellant. At oral argument the suggestion was made that the bondsman was acting as an unofficial agent or partner of the Nevada court when it sought to bring Ouzts to justice. It is therefore claimed that as "an arm of the court," the appellees became clothed with some of the court's official authority. No precedent is offered to support this strange thesis. Legally, we note that the court has its own official arms for securing the presence of a fugitive defendant."*

*"Moreover, the system of extradition which is available 555*555 to the state is completely "separate and distinct" from the private reclamation interests and procedures of the bondsman. <u>Fitzpatrick v. Williams, supra</u>. Practically, we also know that the bail bondsman is in the business in order to make money and is not acting out of a high-minded sense of devotion to the administration of justice. We believe that the bondsman here was acting accordingly. As observed in <u>People v. Houle</u>, 13 Cal.App.3d 892, 895, 91 Cal.Rptr. 874 (1970), the bondsman was acting "to protect his own private financial interest and not to vindicate the interest of the state."*

*"We find no state action here to support a claim under 42 U.S.C. § 1983 and again affirm the judgment of the trial court."*

**61)** Separate and apart from the Court issued, and later vacated warrant and forfeiture, Plaintiff's "sign-in" log reveals that he materially breached the bail contract regarding his critically important "reporting requirements". I could have re-arrested Plaintiff on the first one or two instances for contractual breaches, and without more--since that was reason enough to justifiably determine that his bail bond was in jeopardy. However, Plaintiff's pattern of non-compliance, non-communication and contractual misconduct became much more than that; it was egregious, and, it was my contractual duty to protect the bail bond.

**62)** By inexcusably failing to comply; disappearing; not living at the address on file; not physically checking-in as contractually promised (and as court ordered); and, then getting a Court ordered warrant and bail bond forfeiture, Plaintiff alone, consciously and willfully placed the bail bond posted on his behalf in jeopardy—fully justifying Plaintiff's bail revocation.

**63)** Plaintiff's sign-in log, Exhibit **"G"**, demonstrates the following:

<u>12/9/11 through 1/25/12</u>: No recorded incident(s) reported.

<u>1/30/2012 through 2/3/2012</u>: Plaintiff missed contractual and court ordered physical sign-in, was "a no show; there were no calls, no answer by telephone, and Plaintiff was placed on the high risk watch list. Next sign-in defendant was warned and admonished.

<u>3/26/2012 through 3/30/2012</u>: Plaintiff missed contractual and court ordered physical sign-in, no show no call, no answer by phone. Next sign-in defendant was warned and admonished for the last time.

<u>5/10/2012</u>: *The last time Plaintiff physically reported as was contractually required. Indemnitors contacted and warned, no office contact with defendant.*

<u>5/14/2012 through 5/18/2012</u>: Criminal Defendant (Plaintiff) Missed contractual and court ordered physical sign-in, no show no call, no answer by phone. *Indemnitors contacted and warned, no contact with defendant.*

**5/21/2012:** *Court Order Bench Warrant and Bail Bond Forfeiture:* Zouvelos and other bounty hunters dispatched to investigate, search, re-arrest, surrender to jail and exonerate the bail bond of criminal defendant.

## The Lawful Search For Plaintiff, Ramon Lopez

**64)** As a professional bail agent and bounty hunter I have investigated many thousands of criminal defendants out on my bail bonds, and on behalf of many other bail agents. Therefore, I can aver with certainty, that Plaintiff is neither the first, nor the last, now convicted, criminal defendant to get a court-ordered bench warrant; lie about it; and, then attempt to sidestep and slander his bondsperson.

**65)** However, even where a warrant was issued and later vacated, that is sufficient enough private contractual cause and justification to search and re-arrest a criminal defendant out on bail bond. Especially where the multitude and confluence of circumstances, as described herein, led me (or any dutiful bail agent) to determine that my $100,000.00 bail bond was in jeopardy.

**66)** Additional circumstances that merit a re-arrest secondary from a vacated warrant include, but are not limited to: indemnitor and criminal defendant non-cooperation, non-compliance, dishonesty, un-forthrightness and lack of communication. In all these regards, Plaintiff and his indemnitors failed miserably.

**67)** Plaintiff's sign-in log is conclusive regarding his failure and material breech(s) of the private bail contract/indemnity agreement. These check-in breeches of contract alone clearly required that this high bail needed to be exonerated. See **Exhibit "H"** executed authorization to search, re-arrest and surrender Plaintiff.

**68)** As mentioned, commencing on May 21, 2012, my team and I conducted active surveillance in search of Plaintiff. His contractually listed residential address, which Plaintiff had re-verified on his last sign-in date, May 10, 2012, was "223 Knickerbocker Avenue, Apartment No, 2-L, Brooklyn New York 11237." However, the "stake-out" of that premises' perimeter yielded no entry or exit of Plaintiff over a several days of costly and time consuming surveillance.

**69)** Plaintiff in his complaint, ECF document No. 12, Filed 4/9/14, page No.7 of 36 were Plaintiff avers, *"On Tuesday, May 22, 2012, at about 7:30 am, officer John Doe #1, of the 83rd precinct warrant squad visited plaintiff home due to an erroneous warrant in the Court system caused by the Kings county Supreme Court Clerk, on Monday, May 21, 2012, when entering the vacated Warrant ordered by Honorable W. Garnett. Exh ('A'). Upon the officers verification of the non existent warrant, John Doe #1, confirm no warrant existed."... "and thereafter departed from plaintiff's home without apprehending him."*

    **a)** Plaintiff's exhibit "A" (Zouvelos Exhibit "**I**") ECF No. 12 page No. 17, a purported E-courts/Webcrims printed on 8/3/2012, Plaintiff also avers regarding exhibit "A" as follows:

        **"A"** *'On May 21, 2012, Judge Walsh issued a bench warrant (Bail Forfeit/bw Ordered)';* and, **"B"** *'Judge Garnett vacated the bench warrant (Adjourned, Warrant Vacated, Bail Continued)';* and, that: **"C"** *'May 23, 2012 Judge Walsh acknowledges my lateness to court on Monday, May 21, 2012, due to an emergency and the court finishing early for the day had appeared in court to vacate his warrant on May 21, 2012. As a result Mr. Lopez remains in good standing with the courts."*

**70)** No such effort was made by Plaintiff or his indemnitors to report what transpired and to check-in as contractually required, or for Plaintiff or his indemnitors to explain his contractual breeches to me relating to what purportedly transpired with the Court in Plaintiff's exhibit "A".

    **a)** My Exhibit "**J**" is a real time accounting of what transpired, what I acted upon, and what was confirmed by me with the Court.

**71)** Some of the true facts, well known to Plaintiff, but are "conveniently" **not** reflected in his complaint, are as follows; Plaintiff went missing from my office for nearly two weeks leading up to; Plaintiff's May 21, 2012 court ordered warrant and forfeiture; this warrant forfeiture was not disclosed by him or his indemnitors to my office as contractually required; that Plaintiff on, May 23, 2012, was "Returned on a Warrant"; that he was purposefully evasive; that Plaintiff lied on his contract and did not live at the address on

file; that Plaintiff and his indemnitors were uncooperative and unforthcoming with any information during our search; and, that they, in concert, refused to disclose Plaintiff's whereabouts that compelled me to initiate the search, is further evidenced by Plaintiff's pre and post warrant and forfeiture issuance, court vacatur, and his "missing in action". This is all as clearly indicated in his sign-in log, and as verified in my real-time printing of Court records, my Exhibit "**J**".

**72)**   Therefore, Plaintiff's attempt at revisionist history as offered in his complaint and amended complaint, ECF document 12, page No. 8 purportedly showing that his exhibit "A", "*...clearly demonstrates Plaintiff was in good standing with the Court since the commencement of his bail December 8, 2011*", are outright fabrications. Plaintiff is only providing his own "convenient" accounting of the actual events, which prove the following:

    **a)** Plaintiff was not always in good with me and my office (multiple contractual breaches);

    **b)** Plaintiff was not always in good standing with the Court (warrant and forfeiture);

    **c)** Plaintiff caused the warrant and forfeiture of the $100,000.00 bail bond, which the Court, thankfully later vacated;

    **d)** Plaintiff had a history of contractual non compliance, absence, dishonest, deceptive, evasive conduct and behavior; and,

    **e)** that, the confluence of material breech(s) of contractual circumstances by Plaintiff himself, is what led me to re-arrest and surrender him to jail.

In McQueeney v. Wilmington Trust Co., 779 F. 2d 916 - Court of Appeals, 3rd Circuit 1985) states: "*One who believes his own case to be weak is more likely to suborn perjury than one who thinks he has a strong case, and a party knows better than anyone else the truth about his own case. Thus, subornation of perjury by a party is strong evidence that the party's case is weak. Admittedly the conclusion is not inescapable: parties may be mistaken about the merits or force of their own cases. But evidence need not lead inescapably towards a single conclusion to be relevant, it need only make certain facts more probable than not. The evidence of subornation here does cast into doubt the merits of McQueeney's claim, even if it does not extinguish them.*" "*There is ample support among both scholars and courts for this line of argument. Wigmore calls the inference "one of the simplest in human experience": It has always been understood —*

*the inference indeed is one of the simplest in human experience — that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.* " (See, McQueeney, *infra*)

**f)**     When I was inquiring and then searching for Plaintiff, his indemnitors advised me that they would advise Plaintiff that we were looking for him, and that he needed to report to my office forthwith. Plaintiff's "reporting" to my office again never happened.

**g)**     Plaintiff's contractual indemnitors also purported that they knew nothing about Plaintiff's warrant and bail bond forfeiture, which were later vacated, or of his whereabouts. Plaintiff indemnitors were advised that the bail bond was in jeopardy. Even after Plaintiff was re-arrested no excuses were given by Plaintiff for his failure to sign-in or his missed court date which resulted in the issuance of a bench warrant with a bail bond forfeiture.

**h)**     The only conclusion that could be reached, which was later verified, was that it was apparent Plaintiff had, and for no legitimate reason, continued his contractual non-compliance, and because of him "warranting" and "forfeiting", and me searching for him, Plaintiff was actively evading any contact with me and my office—all clear material breeches of private contract.

**i)**     Without the assistance and / or cooperation of Plaintiff or his contractual indemnitors, my team, which included co-defendant Conwell, reported to the police precinct and disclosed the address "223 Knickerbocker Avenue, apartment No, 2-L, Brooklyn, New York 11237" (hereinafter knows as "223 Knickerbocker"), and other locations we intended to search within the confines of that precinct's service area.

**j)**     The NYPD desk sergeant was shown the private contractual re-arrest authorization and bail paperwork. No assistance from the New York City Police Department (NYPD) was requested or given.

**73)**     The team headed to Plaintiff contractual residential address, and after knocking on the

door No, 2-L, the team identifying being from the "bondsman's", "Fianza" office looking for Plaintiff, the residents then voluntary permitted entry into the apartment for our search of him. The residents stated that Plaintiff lived there a long time ago, but had not been living in that apartment for several years. This was contrary to the contractual information given by Plaintiff and his indemnitors. This, in and of itself was a critical material breach of the private bail/indemnity contract.

### New York Law Only Requires That Re-Arresting Private Agents Report to the Nearest Police Precinct Prior to Search or Apprehension

74) New York's General Business § 74-a mandates that notification is required by re-arresting private agents to the local precinct prior to searching and /or apprehending a suspect wanted by them—purely a private action. This statutory reporting requirement is also referenced in the New York City Police Department Operating Guide 208-71, which both state in part as follows:

**The New York General Business § 74-a Notification;** *"Prior to taking or attempting to take into custody a person, a bail enforcement agent shall notify a local law enforcement agency having jurisdiction over the area in which the person is believed to be located of such bail enforcement agent's intentions. The notification shall be provided on a form prescribed by the local law enforcement agency. Notwithstanding, the form shall include information including but not limited to name, address, local address and motor vehicle registration of said agent. The local law enforcement agency in prescribing such form may consult with the division of criminal justice services. A representative of a local law enforcement agency **may** accompany a bail enforcement agent when the bail enforcement agent enters what is believed to be an occupied structure to **search** for or to **apprehend** a person."*

75) Plaintiff's lawful and private contractual re-arrest was executed on a public street and *not* within an *"occupied structure"*. Plaintiff's re-arrest was without any overt or covert NYPD direction, advice, presence, action, and / or assistance. No police assistance was "*requested*", offered, needed, required or occurred.

**The New York City Police Department (NYPD) Patrol Guide**

76) Since Plaintiff referenced the NYPD Patrol Guide in his complaint, I shall list that section of the Patrol Guide that is relevant to Plaintiff's re-arrest under private contractual authority.

THE NYPD PATROL GUIDE PROCEDURE NUMBER 208-71, which states in part as follows:

*"Direct precinct RMP unit to accompany bail enforcement agent, if requested, in cases where wanted person is believed to be present in an occupied building. Since this apprehension is a* <u>*private contractual matter,*</u> *the Department is under no general duty to assist the bail enforcement agent, just as the Department has no duty to assist a car repossessor, for example, in the recovery of a vehicle. However, police personnel should respond to the scene of the apprehension to preserve the peace in the same manner that the Department preserves the peace at the scene of civil process executions by the City Marshal. The law states that a "representative" of a local law enforcement agency may accompany a bail enforcement agent when the agent enters what is believed to be an occupied structure to search for or apprehend a person." However, the provision authorizing law enforcement agents to accompany bail enforcement agents to search for or apprehend someone is not intended to in any way to expand the police powers beyond what is currently authorized by law, nor does it require a police officer to assist an agent in this manner. It must be emphasized that the Department's role when accompanying a bail enforcement agent to the scene of a prospective apprehension is preservation of the public peace, in the same manner that the Department preserves the peace at the scene of civil process executions by the city marshal. This Department will NOT permit or give assistance to the bail enforcement agent to break and enter any dwelling for the purpose of seizing a defendant inside. The bail enforcement agent should be further informed that he/she is subject to arrest if he violates any laws in New York."*

77) Therefore, and respectfully, it is clear that no "state action" was required for the mere compliance with NYGBL § 74-a, statutory notification, *"…shall notify a local law enforcement agency having jurisdiction over the area…",* and / or NYPD's 208-71 is not "state action" at all.

## Zouvelos' Lawful, Unassisted by Law Enforcement Re-Arrest/Surrender to Jail of Plaintiff

78) After leaving the building located at 223 Knickerbocker, and without any incident or police involvement, we were approached on the public street by one of the contractual indemnitors, *to wit:* the Plaintiff's brother, David Lopez, who is **not** a party to this action. He advised that he did not want to get his brother, Plaintiff, in any further trouble, and did not want him taken to jail.

79) David Lopez was convinced to finally lure his brother, Plaintiff, so we could confirm that he had not departed from the jurisdiction. Thereafter, on the street and in public, Plaintiff's re-arrest was peacefully effectuated without any — law enforcement involvement whatsoever. See, Exhibit "**K**" the before and after photographs of the Plaintiff re-arrest.

80) Often, pictures and video are utilized to document evidence and memorialize the search and apprehension of a criminal defendant such as Plaintiff. This is done by contractual consent, and to also preserve the record of the re-arrest.

81) Plaintiff acknowledged, after he was re-arrested, that he was not hurt, injured or harmed in any way. See **Exhibit "L"**

82) The criminal defendant was re-arrested, processed and taken to the New York City Department of Correction (NY DOC). See, Zouvelos' private "body slip" acknowledgment of receipt of custody, Exhibit "**M**" was "signed-off" by a correction officer, NY DOC at Riker's Island.

83) See, Continental Casualty Company, v. The People of the State of New York, 202 Misc. 740, (N.YS.C. Bronx 1952) states in part: *"There is no question but that a surrender of the principal Cook under this section would exonerate the surety (Matter of People [Lexington Sur. & Ind. Co.], 272 N.Y. 210"...."...acts of filing the surrender piece and copy of the bail bond with the warden of the city prison in New York County and the filing of the warden's certificate of acknowledgment was a surrender. I am of the opinion~* 
*that it was."*

84) This was a "text book" private bail contractual pretrial investigation, re-arrest, surrender to jail, and bail exoneration. The documents indicated above and as set forth, speak for themselves. My "Body Slip" clearly demonstrates that I and my designees acted as "private actors" that acted without the assistance of law enforcement.

85) The Court in <u>United States v. Meltzer</u>, 100 F. 2d 739 – (Court of Appeals, 7th Cir. 1938) held in part:

*"The defendant from the signing of the bond for him, is released by the United States Marshal, and then the bondsman becomes the jailer of the defendant; and, if that jailer, that bondsman, feels himself insecure; if he feels that his defendant is going to jump his bail, his bond; all that he has to do is to bring him into court, and say, Your Honor, I desire to surrender this defendant; that's all he has to do; and the Judge says to the Marshal; Mr. Marshal, take the defendant into custody; whereupon, the Marshal takes the defendant back into the custody of the United States, and the bondsman is released of his liability on the bond."*

a) The American Bar Association (ABA) published in, *"Criminal Justice Pretrial Release Section Standard"*, regarding pretrial release supervision of criminal defendants, are clear, and mirror common standards and practices as contained in private bail contracts maintained by me and all bail agents, and state in part as follows:

**ABA 10-5.6. Sanctions for violations of conditions of release, including revocation of release:** *(a) A person who has been released on conditions and who has violated a condition of release, including willfully failing to appear in court, should be subject to a warrant for arrest, modification of release conditions, revocation of release, or an order of detention, or prosecution on available criminal charges. (b) A proceeding for revocation of a release order may be initiated by a judicial officer, the prosecutor, or a representative of the pretrial services agency. A judicial officer may issue a warrant for the arrest of a person charged with violating a release condition. Once apprehended, the person should be brought before a judicial officer."*

<u>**Security Placed on Deposit for the $100,000.00 Bail Bond**</u>

86) At set forth above, the title deposited as partial security to cover any possible contingency charges was never owned by the criminal defendant, Plaintiff. A copy of security deposit receipt with the last four (4) digits of the vehicles VIN No. 1818 listed as security, is only

David Lopez. See Exhibit "**B**". Copy of the vehicle title bearing the name of the vehicle owner is also, David Lopez. See Exhibit "**N**".

87) The security deposit receipt agreed to and accepted by the depositor/indemnitor, David Lopez, states in part as follows;

*"That said collateral and or retainer deposit is as security for payment of any sums which may become due to the bond agent and or agency and or the "surety" and or consultants by the terms and conditions of the bail bond agreement executed by said defendant and or the Indemnitor(s), all the terms of which are made a part of the his / her receipt by this reference.*

88) The Court in, <u>International</u>, *infra*, New York Senior District Judge Sifton stated: *"Furthermore, in this case the market seems particularly well equipped to provide the <u>monitoring function</u> plaintiff seeks, in that the retailers through which plaintiff distributes its bail bonds <u>are in a position to follow individual</u> bail forfeiture proceedings and <u>pass the cost of doing so on to bond Purchasers</u>."*

## <u>The Acknowledgment of the Debt Owed by the Depositor, (Who Is Not The Plaintiff Herein) and the Voluntary Surrender of the Bail Security</u>

89) Directly after the criminal defendant was placed into custody, David Lopez, the cash and security depositor, asked, and was advised that he is responsible for the costs incurred by contract for the investigation, search, re-arrest, transport, and surrender to jail of the criminal defendant for bail exoneration.

90) Contractual indemnitor, David Lopez, acknowledged the debt, and voluntarily handed the keys to his vehicle (security deposit) as a down payment for the services and contingency charges incurred. It was agreed at that time, that David Lopez would come to the office to negotiate payment so that his vehicle may be returned. David Lopez made many arrangements to pay his outstanding invoice, but never did. All we received were numerous false promises, and to date, there is still an unpaid balance due. See Exhibit "**O**" email to Zouvelos from Conwell, dated June 25, 2012, and notice(s) from Conwell to depositor, David Lopez.

91)    At the time of contract execution, the vehicle was disclosed by its owner as being in excellent condition according to Kelly Blue Book value (hereinafter KBB). However, after the owner surrendered same, the vehicle was found to be in poor mechanical condition, and not worth anything near its disclosed KBB value. David Lopez knew this, as it was later determined that the vehicle had a "blown" motor.

### The Private Contract In Context Addresses `Frivolous Allegations:

92)    I respectfully draw the Courts attention to my Exhibit "E", my private bail contract/indemnity agreement, originally printed on legal size paper. This document is designed to provide a potential client full notice and disclosure prior to the acceptance of any premium or security. All efforts were made to educate the potential client with great detail, and to discourage them from taking on a financial undertaking if in fact they and the criminal defendant could not be fully compliant with the terms and conditions contained therein. All clauses are written in plain English, and many pertinent clauses, terms and conditions are purposefully redundant, and are highlighted so that all variables are fully understood, acknowledged and agreed to by all parties. Although not a statutory requirement, my contracts were written in accordance with FDIC's "Truth In Lending Act", and are transparent. The contract states in part the following:

a)    Paragraph No. 21; Indemnitor and Criminal Defendant (Plaintiff) Hold Harmless for Physically Inspecting places of Residence and work etc. for Contractual Compliance, Home Verifications, for Bond Revocation and to Re-arrest.

b)    Paragraph No. 37; Indemnitor and Criminal Defendant (Plaintiff) Authorization to Revoke Bail, Warrant or Bail Bond Forfeiture.

c)    Paragraph No. 40; Indemnitor and Criminal Defendant (Plaintiff) Authorization to Revoke Bail Bond and the Responsibility for Change of Status Notifications, Warrant or Forfeiture.

d)    Paragraph No. 43; Indemnitor and Criminal Defendant (Plaintiff) Authorization to physically inspect, property, premises any location at any time.

e)    Paragraph No. 48; Indemnitor and Criminal Defendant (Plaintiff) Authorization to Re-arrest and Surrender the Criminal Defendant (Plaintiff) at Anytime, and Also Prior to Any Forfeiture Pursuant to NY CPL § 530.80.

f)    Paragraph No. 52; Indemnitor Attestation That They Maintain and will Continue to Maintain the Moral Persuasion to Convince The Criminal Defendant to Always be Fully

Compliant with the Terms and Conditions of The Bail Contract and All the Terms and Conditions of His Jail release.

**g)** Paragraph No. 53; Indemnitor and Criminal Defendant (Plaintiff) Authorization, and First and Final Notices of Exclusive Rights to Aggregate, Gather, Catalogue, Film, Record, Memorialize Any and All images and Recordings, and Full Waiver of Rights to and Hold Harmless for of any materials gathered While Out on Bail, For Revocation of Bail etc.

**h)** Paragraph No. 56; Indemnitor and Criminal Defendant (Plaintiff) Pre-Authorization to "Surrender" the Criminal Defendant (Plaintiff) at any time, at the Bondsman's Sole Discretion and Without Further Notices.

**i)** Paragraph No. 58; Indemnitor and Criminal Defendant (Plaintiff) Authorization to Re-Evaluate, Re-Assess Criminal Defendants' Flight Risk and For Re-Arresting Same, When Trust is Lost, Underwriting is Questionable, Information And Or Circumstances Have Changed Without Prior Notifications from the Indemnitor(s) or Criminal Defendant, and Contractual Non Compliance.

**j)** Paragraph No. 61; Indemnitor and Criminal Defendant (Plaintiff) Acknowledgment and Authorization to Hold Harmless and Give Sole Discretion to Zouvelos and His Designees For Actions and Re-Arrest of Criminal Defendant.

**k)** Paragraph No. 64; Indemnitor and Criminal Defendant (Plaintiff) Acknowledgment, The Binding Arbitration Clause Re-visited, That Any and All Contractual Disputes That Must Be Decided Through Binding Arbitration.

**l)** Paragraph No. 80; Indemnitor and Criminal Defendant (Plaintiff) Acknowledgment and Authorization to Cost, Fees and Expenses as listed in the Bail Contract/Indemnity agreement.

**m)** Paragraph No. 81; Indemnitor and Criminal Defendant (Plaintiff) General Release Acknowledgment and Hold Harmless for Zouvelos, Officers, designees or any Entity Acting on Zouvelos' behalf.

**n)** Paragraph No. 82; Indemnitor and Criminal Defendant (Plaintiff) Irrevocable Consent, and Waiving of Rights to file a lawsuit or criminal action for the Lawful Apprehension and Surrender of Criminal Defendant.

**o)** Paragraph No. 89; Indemnitor and Criminal Defendant (Plaintiff) Acknowledgement That Each Understood the Agreement in Full; Had Any And All Questions Answered to Their Satisfaction; Advised that Each has their own Responsibility to Seek Legal Counsel Pertaining to the Bail Contract and the criminal defendants bail undertaking; by Executing the Contract it is in Full Force and in Effect; the Sole Responsibility of Each and Every Indemnitor to Know and Inform Zouvelos of any and all Changes of Criminal Defendants' status; and the ensuing bail revocations; the charges that will ensue per contract if they fail to do so; and that they received a copy of the contract upon signing, which is governed under New York Civil Contract law.

93) I cannot attest to any of the Plaintiff allegations against the City of New York, (New York City Police Department (NYPD) and / or New York City Department of Correction (NYCDOC) relating to his purported recreational activities that occurred at a Brooklyn jail rooftop (Brooklyn House of Detention, "BHDC"), near a basketball hoop, where Plaintiff alleges that he injured his ankle on a purportedly frayed rubber mat while he was lawfully incarcerated (and on a date unspecified).

   a) However, in Plaintiff's ECF document 12, page No. 9, (beginning on the seventh line from the bottom of the page), Plaintiff makes a critical admissions against his own interests, which further support my position that the Courts of the State of New York recognize that me and my designees are *"private agents"*, not "state actors", and the Judge *"did not want to interfere"*, and that Plaintiff's bail was reset at $100,000.00 because he remained a 'flight risk'.

   b) In this vein, ECF document 12, Plaintiff avers that, *"...on May 29, 2012. As per the hearing, the Judge never expected the bondsmen's action and offered the same bail..."*... *"Indeed bail was given for the fact plaintiff was never a 'flight risk' since the commencement of the bail proceedings."* As the Court is aware, this statement in Plaintiff's complaint is totally inaccurate and contradictory.

   c) It is clear that Plaintiff totally misunderstands the purpose of bail or now pleads ignorance. As this Court is aware, it is the public policy of the State of New York that an accused, ones that are not considered by the Court as being a 'flight risk', do not require bail, let alone a bail bond in the amount of $100,000.00 dollars. With Plaintiff, the Court did not only set bail once at $100,000.00, but twice.

   d) By Plaintiff suggesting that King's County Supreme Court Judge Walsh somehow concurred with what he asserts in his complaint, *"...Plaintiff was never a 'flight risk'..."* is absolutely a farce. As the Court is aware, nothing can be further from the truth, as the Judge exonerated my bail bond, and again reset bail at $100,000.00 bail bond, or $75,000.000 (seventy five thousand) in cash bail. So was Plaintiff a flight risk? Definitely!

   e) The Court's 'flight risk' bail assessment of Plaintiff did not change, even after my re-arrest and surrender of him, and since he was first arraigned six months prior. Therefore,

it is clear, that pursuant to CPL § 530.80 Plaintiff was placed in jail only after he was lawfully re-arrested with no "state action", and he further remained a 'flight risk', as the Court required him to post the same $100,000.00 bail bond yet again.

**94)**   CPL § 530.80 does *not* require that an obligor or bail agent come forth with a reason to have the bail exonerated even in the event when there was no forfeiture. In this case the Court had initially ordered "warrant", "bail bond forfeiture" and there is no doubt that Plaintiff's non compliance placed the bail bond in jeopardy. See, <u>Joseph Saladino et al.,</u> <u>Respondents, v. Stuyvesant Insurance Company</u>, Appellant 39 A.D.2d 765 (2d Dept. 1972):

*"Although no forfeiture had been declared by the court, defendant was justified in apprehending and surrendering the principal. At any time before forfeiture of an undertaking, a surety may surrender the principal and, for that purpose, may arrest him at any place within the State (former Code Crim. Pro., §§ 590, 591; CPL 530.80). Under the circumstances obtaining at the time, defendant had ample cause for belief that its bonds were in jeopardy."*

**a)**   Unfortunately, neither Plaintiff, nor his contractual indemnitors appreciate what could have been the long term financial ramifications and disaster exclusively because of Plaintiff's contractual non-compliance. The fact that the Supreme Court Judge in this matter had no immediate duty to grant "vacatur" and financial relief relating to Plaintiff's warrant and forfeited bond is clearly not appreciated by the Plaintiff or his contract indemnitors.

**b)**   The Judge, as most do, could have easily left and justifiably permitted the penal sum of $100,000.00 forfeiture to stand, and to the immediate financial detriment to me and my surety, and most certainly, to the Plaintiff, and his contractual indemnitors. Since the Plaintiff alone placed the $100,000.00 bond in jeopardy, and was contractually non compliant, I and my surety were justifiably no longer willing to insure the Plaintiff's appearances with the Criminal Court any longer. That is why I lawfully returned the Plaintiff, without incident, to the custody and control of the jail for Court production for immediate bail exoneration. After all, it was $100,000.00 penal liability, which the Plaintiff willfully placed in jeopardy, with no guarantee that it would not happen again, made it a clear private contractual case of "once bitten, twice shy" bail revocation.

95)     See also, <u>People v. Peerless</u>, 21 A.D. 2d 609, (1ˢᵗ Dept. 1964):

*".....[w]hen bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment." (Taylor v. Taintor, 16 Wall. [83 U. S.] 366, 371.*

96)     **As stated in 8 C.J.S. Bail § 25, p. 44**: *"The right of the bail to seize their principal is not dependent on issuance of new process. None is needed. The right results from the nature of the undertaking of bail, and if there is no statutory provision to the contrary it need not be exercised by process, but, ordinarily, the bail may arrest the principal without any warrant or bail piece. (Emphasis added)."*

97)     In <u>People v. Jimenez</u>, indictment 4433/2007, New York County Supreme Court, Justice Laura Ward confirmed the following:

*"The Court: I did some research last night under the criminal procedure law starting with section 530.80 and I was unable to find any case law that would prohibit me from accepting a surrendered defendant....All the bondman has to do – this was my concern was come and say, Judge, I don't trust him. I don't have to question the bondsman nor do I – nor did I find a case that said I had the right to do that."*

*"...I could take it into consideration in exonerating the bond in resetting the bail the fact that your client, according to the bondsman, had been reporting on a regular basis and all those things, but I could find nothing that would support my ability to force him to maintain the bond."*

98)     In <u>People v. Ariel Torres</u>, indictment #: 4593-09); Kings County, New York, Supreme Court, Justice Martin Murphy confirmed the following:

*"The Court: Your client has gone to him, they have a contract. You know as well as I, if that contract violated in any way, he comes back and he surrenders him in the court. I set bail again. You can go to another bondsman."*

99)     As such, criminal courts of the State of New York acknowledge and recognize that a bail contract is purely a private matter governed by the private bail contract, and contract law.

100)    Plaintiff alleges in his complaint, that the manner in which I handled his pretrial release and

community supervision while out on my bail bond, and my actions to exonerate his bail were atypical; abusive; inappropriate; unnecessary; unreasonable; and / or contrary to the New York bail bond industry common standards and practices.

101) Plaintiff, in order to support his purported § 1983 claims against me, only refers to irrelevant articles, and a previous unrelated administrative action which is presently on appeal in the New York Supreme Court, Appellate Division, First Department.

102) In addition, Plaintiff authored and published his complaint casting aspersions and made false allegations about me and my bail operations, that are untrue and not germane in this § 1983 action, such as: *"On the contrary to bail bond standards, "... "Indeed the bondsmen motives was to illegally revoke Plaintiff's bail and steal the collateral... "* further purporting on how other *"reasonable bondsmen would use proper procedures... "* to deal Plaintiff's purposeful material breeches of contract, court-ordered and vacated "warrant and forfeiture".

103) What is clear from a careful analysis of Plaintiff's amended complaint is that **a)** it violates FRCP No. 8, and **b)** contains matters, allegations and other irrelevant references which, in any event, must be stricken. With respect to FRCP Rule 8 it is clear that a pleading must contain, *"a short and plain statement of the claim showing that the pleader is entitled to relief"*. In this regard, Plaintiff's complaint does not clearly establish the requisite elements to sustain a 1983 claim, fails to clearly elucidate any proximally related damages which he has claimed. While a *pro se* Plaintiff is given latitude in submitting a pleading, that latitude does not exonerate a Plaintiff from the rules of pleadings clearly established in FRCP Rule 8. At set forth herein, Plaintiff's 1983 claim must be dismissed since there is absolutely no state action, nor are there any damages which can arise without clearly demonstrating a state action nexus.

104) While it is clear and undeniable that there is no state action in this matter, the other allegations set forth in Plaintiff's complaint, which are designed to paint *pro se* defendant, Zouvelos, in a bad light are irrelevant, immaterial and overtly prejudicial. In this vein, a 1983 action cannot be based on mere allegations of prior conduct, which conduct is denied, and press articles, as the only concern is whether there was any state action, or whether the actor was acting under the color of state law. All other matters which are not germane to the

specific 1983 claims made by Plaintiff must be stricken pursuant to FRCP Rule No. 12 (f). See for example, <u>Precimed Inc. v. ECA Medical Instruments, No. 13-CV-761A,</u> (W.D.N.Y. January 28, 2014):

*"To prevail in such a motion, [moving parties] must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." <u>Roe v. City of New York, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)</u> (internal quotation marks and citation omitted). "Whether to grant such motion, however, is within the district court's discretion." <u>Holmes v. Fischer, 764 F. Supp. 2d 523, 532 (W.D.N.Y. 2011) (Skretny, C.J.)</u> (citation omitted).*

105) The allegations in Plaintiff's complaint, which have absolutely nothing to do with an alleged 1983 violation, must be stricken since the factors outlined in <u>Precimed</u>, *supra,* are clearly met. See also, the discussion in. <u>Fuchs Sugars & Syrups, et al</u> v. <u>Amstar Corporation</u>, 402 F.Sup. 636, (S.D.N.Y. 1975).

106) However, while the Rule 8 and 12(f) violations are certainly present in this matter, it is Defendant Zouvelos' well supported and documented contention, that notwithstanding these violations, Plaintiff's complaint must be dismissed, with prejudice, pursuant to FRCP 12(b)(6).

## Defendant Zouvelos' Actions Were Private, As Contractually Promised, and Were in Complete Compliance With The Law, Industry Standards, Customs, and Usage

107) It is clear that there is no Federal subject matter jurisdiction since the law is well settled in that a bail agent and his designees are; private actors only and that there are no other bases for this Court to continue any claims, pendant or otherwise, as there is no diversity of citizenship or other sustainable jurisdictional preconditions pertaining to defendant Zouvelos.  With respect to industry standards, customs and usage this Court respectfully directed to ***http://www.vera.org/sitesdefault files/resources/downloads/bailbond.pdf.***

108) VERA's New York City based, and New York State licensed professional bail bond agency rules, and the resulting effects, are not only instructive, but conclusive. VERA required termination of a bail bond when a criminal defendant failed to comply with the terms and conditions of its private bail contract; failed to appear in court; and, that any

new arrest while out on bail, or flight, triggered the immediate engagement of VERA
bounty hunters to re-arrest a recalcitrant criminal defendant for bail bond exoneration.

109)   The VERA study found that, in exchange for posting a bail bond on their behalf, the bail
bond agency had each criminal defendant sign a contract agreeing to take part in a
pretrial supervision program, *"...each project required bonded defendants to sign a
contract agreeing to abide by a strict regimen..." (Report page No. 6)* Each criminal
defendant released from jail by bail bond were required to physically "check-into" the
offices of VERA as contractually promised, as was my contractual agreement with
Plaintiff and his indemnitors. As in my bail operations, VERA supervised criminal
defendants while they reported to probation and parole; in drug and alcohol treatment;
and also while attending vocational training and educational programs and other
employment.

110)   The VERA study further found that the reasons for re-arrest and bail exoneration
included, but were not limited to, criminal defendants failure to report to the offices as
contractually promised and / or for any new arrest. Moreover, VERA's study also
concluded: *"The financial risk [of forfeiting the bonds] focused program staff on the
need for the principal's strict compliance."* Brooklyn Law Journal of Law and Policy,
"None of Their Business", 2010. *"After supervising someone for 99 days, the Bronx Bail
Bond Agency attempted to persuade the court to release the defendant on his or her own
recognizance..."* (Study page No. 27 at 18), exonerating their bail bonds.

111)   The VERA study also found that:

a)   *"... intensive supervision was intended both to deter misconduct and to give staff notice if
there was reason to return a participant to jail"... "For the population that the agencies
were working with, the possibility of returning a defendant to custody was important for
the message it sent to both the defendant and the Department of Correction—that "the
program was serious about controlling behavior and preserving community safety."*
Brooklyn Law Journal of Law and Policy, *"None of Their Business"*, 2010.

b)   *"Because Vera's pretrial intensive supervision projects exercised the power of
the bondsperson, program staff could control people with the threat of jail. And, if the*

*threat failed, staff could and did arrest and surrender people without obtaining a court-issued warrant."* (Report page No. 30).

c) To further provide context Plaintiff's unsubstantiated and unsustainable allegations contained in his compliant that, *"On the contrary to bail bond standards,"... "Indeed the bondsmen motives was to illegally revoke Plaintiff's bail and steal the collateral..."* further purporting on how other *"reasonable bondsmen would use proper procedures..."* - - Hypothetically, if Plaintiff were bailed out of jail by VERA's not for profit New York City Bail Bond Agency, and VERA's bail bondsmen that were duly licensed by the (NYDFS), Plaintiff would have counted among the over **49 % (Report page No.13)**, out of the total bail bonds posted by VERA that addressed the recalcitrant criminal defendants that VERA's bounty hunters re-arrested and returned to jail for breaching the VERA private bail contract—exactly as I did with Plaintiff.

112) As in my bail operations and community supervision, VERA's supervision of criminal defendants penal liability ended as follows:

*"The project's supervision of a principal ended in one of four ways: The principal absconded; the case was disposed; the court relieved the project of its responsibility by releasing the principal on his or her own recognizance or transferring the principal to another agency; or the project surrendered the principal to the department of corrections."* (Report page No. 13)

113) The latter, and for material breeches of contract and the lawful authority granted as explained herein, is exactly what occurred with Plaintiff.

*"The option to surrender a person to the department of corrections is a fundamental aspect of the model because no matter how intensive, community supervision will not work for everyone." defendants who pose risks in the community that we do not yet know how to manage."*
(Vera Report Page No. 13)

114) Private and for-profit bail agents do not share in the pool of taxpayer funds. They operate only with private funds. That is why, in return for issuing the Court a contractually promised "appearance bail bond", bail agents in return receive private performance contracts, from their private indemnitors and later criminal defendants, as I did with Plaintiff. In these, all executing parties promised full cooperation and compliance to the

terms and conditions of the private bail bond contracts. By the bail agent/obligor making their bail indemnitors and the criminal defendants fully responsible for the penal amount and contingency charges, they, and *not* the New York taxpayers, are directly, fully, contractually and financially accountable.

a) It is clear, that all parties know ahead of time, that they maintain the ultimate financial responsibility and incentive to keep the criminal defendant "in-line"; fully cooperative; forthcoming; and, fully compliant with all his court dates, and with the terms and conditions of the private contract.

In <u>People v. Peerless Ins. Co.</u>, 21 N.Y.A.D. 2d 609 (1st Dept. 1964) states:

*"The professional surety does perform a valuable social function and its operation should not be rendered uneconomic or so difficult that its service may be denied absolutely, or effectively, to persons charged with crime."*

**115)**   Moreover, in an article published in the Economist, June 17, 1999 edition, on the effectiveness of bail bond agents and bounty hunters titled: "Bounty Hunters: Private-Sector Enterprise" quoting University of Illinois Law Review, Mr. John Chamberlin, JD, Magna Cum Laude:

*"....bounty hunter...powers are not granted by the state; they emanate from the private contract between the bondsman and the defendant. The courts have consistently found that bond is an extension of jail; the bondsman, and the bounty-hunter as his agent, have the same powers as a jailer to control the movements of a defendant."... "that bail-enforcement agents (as bounty hunters prefer to be called) play an important role in the criminal justice system."*

**116)**   New York bail agents are purely private actors whose authority derives exclusively from its private contracts with its clients. These private contracts contain covenants for contractual default, rearrest, surrender, indemnification and contingency costs. The private contract/indemnity agreement forms utilized in the Plaintiff's matter are not government form(s), nor were they required to be. *"Please note that such agreements are not insurance contracts, as defined by N.Y. Ins. Law Section 1101, and are not governed by the New York Insurance Law."* NYDFS' OGC Legal Advisory, No. 04-11-22 (2004).

117) Therefore, the actions by me to strictly monitor, search, re-arrest and exonerate Plaintiff's bail, and enforcing my private agreements, were not only without any government assistance or input, but were lawful; reasonable; ethical; necessary; proper; and, as exactly contractually called for.

118) Pretrial release by bail bond private contractual agreements are backed by successful and longstanding standards and practices in existence in the private New York commercial bail bond industry. These were also fully utilized as evidenced in the "taxpayer funded not for profit" model as found in VERA's New York City bail bond agency, and elsewhere. It is clear that VERA's, as well as my own private contracts, delineate the terms, conditions, expectations responsibilities and ramifications, that were enforced by the New York Criminal Courts upon bail posting, re-arrest, and surrender of criminal defendants.

119) Therefore, Plaintiff's allegations, that I somehow treated him contradictory to longstanding and widely utilized bail standards and practices, or differently than any other reasonable New York bail agent or agency fail, and as set forth herein, they are a complete farce. The facts that Plaintiff's own actions, inactions, irresponsibility, recklessness and failure to comply, verified by his sign-in sheet and my Court records, clearly proves Plaintiff's re-arrest was procedurally, substantively and contractually proper and necessary.

120) The instant matter falls squarely within this rubric and respectfully, the pending § 1983 action must be dismissed.

### The Lawful and Common Law Right to Enter Into Enforceable Private Bail Contract / Indemnity Agreements

121) The right of a surety, its bail agent and the bail agents' designees are empowered pursuant to common law, relevant case law and private bail contract/indemnity agreements, which have been universally upheld by the Courts.  The case law is clear, for instance, where the Court found that requiring a defendant to waive "extradition proceedings" and other valuable Federal rights in a private bail/indemnity agreement were enforceable as a *private contract and indemnity agreements.*

**122)** The Court in <u>Lee v. Thorpe</u>, 147 P.3d 443 (Sup. Ct. Utah, 2006), succinctly stated:

*"...relationship between the Plaintiff's and the defendants was one of Contract Law, and their interactions were consistent with that contract"*-- and further solidified the point that, *"...parties to a contract regarding the subject matter of that contract, the contractual relationship controls and the parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed on."*

**123)** In the recent court decision, <u>People v. Western Insurance Company</u> (<u>Western</u>), No. B239848 Cal: Court of Appeal, (2nd Appellate Dist., 4th Div. January 30, 2013), the Court held:

*"Since the 19th century, the United States Supreme Court has recognized that..."... "There is also an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way interfere with this covenant between them, or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him."* (<u>Reese</u>, *supra*, 76 U.S. at pp. 21-22).

**124)** The <u>Western</u> Court properly relied upon the United States Supreme Court decision in <u>Reese</u>, *to wit*: which confirmed the sovereignty of the bail agent's private contract, and that the government shall not interfere in any respects, with the terms and conditions of a bail indemnity agreement:

*"As courts have noted, the bail bond agreement is a contract involving three parties. First, it is a contract between the surety and the principal. Under the terms of the bail bond agreement, "the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty."* (see, <u>Reese v. United States</u> (1869) 76 U.S. 13, 21 (<u>Reese</u>). *Second, "the bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.' [Citation.]"* (see, <u>People v. American Contractors Indemnity Co.</u>, supra, 33 Cal.4th at p. 657.)

## New York Criminal Procedure Law(s) § 530.80 and § 520.20(4)(ii)

125) The law is well settled and the Criminal Procedure Law is clear with respect to the lawful right of *"surrender"* of a criminal defendant, and the *"retention of security placed on deposit."*. These statutes define the lawful procedures that must be followed for each pertaining statute. However, the statute on its own does not make anyone a "state actor', or does it command, instruct, suggest, coerce and / or under what grounds the bail agent or cash depositor of bail *may* act relating to same. See the following:

**NY CPL § 530.80** Order of recognizance or bail; surrender of defendant, which states in part: *"At any time before the forfeiture of a bail bond, an obligor may surrender the defendant in his exoneration, or the defendant may surrender himself, to the court in which his case is pending or to the sheriff to whose custody he was committed at the time of giving bail.."*

**NY CPL § 520.20(4)(ii):** Bail and Bail Bonds, which states in part: *"...seeking retention of security deposited by the latter with the former or enforcement of any indemnity agreement of a kind described in this sub-paragraph, will not lie except with respect to agreements and security specified in the justifying affidavit...",* hence contract law.

126) Since the criminal defendant was re-arrested only by private contractual individuals; surrendered by private individuals to the New York City Department of Correction, pursuant to authorizations and the private bail contracts /indemnity agreements; pursuant to New York Criminal Procedure Law § 530.80, and without incident, there can be no liability attached to the surety, me or my designees.

127) In sum, since the search, location, and re-arrest of the criminal defendant was completely independent of "state actors", was accomplished in public, not in any "occupied structure" and without police, was legal and appropriate. There is no cause of action, nor are there any alleged damages sustained by Plaintiff (which damages are completely denied). I legally and properly authorized the lawful re-arrest of Plaintiff, in public, and without any incident.

128) To assert a valid claim against a bail agent or his designees under § 1983, plaintiff must demonstrate that the bail agent acted "under color of state law." The two-part test set forth in Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482

(1982) is well settled.

129)   First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.  Second, the party charged with the deprivation must be a person who may fairly be said to be a "state actor".  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Id. at 937, 102 S.Ct. at 2753-54.

130)   The first element of *Lugar* is satisfied, as *"a bondsman has both a statutory and common law right to arrest his fugitive"* under New York law. Thus, the only question is whether the bail agent and his designees might fairly be said to have been a "state actors." This requirement is satisfied where the individual "'has acted together with or has obtained significant aid from state officials.'" *Id.* (quoting Lugar, 457 U.S. at 937, 102 S.Ct. at 2754). An individual will act under color of state law if he *"is a willful participant in joint action with the State or its agents." Id.* (quoting Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980)).

131)   Courts have found a bail bondsman to be a "state actor" in severely limited instances. Where the police provided significant assistance in the plaintiff's detention. *Id.* at 1523. For example, in *Bailey v. Kenney,* the court noted that the bail bondsman and officers *"used their show of authority in an attempt to bring plaintiff to the door; they jointly forced their entry into the house with guns drawn; they pointed their weapons at plaintiff when he appeared; and they jointly restrained plaintiff of his freedom while questioning him." Id.*

132)   Similarly, in Jackson v. Pantazes, the Fourth Circuit found that a bondsman acted under color of state law where he enlisted the police's assistance in forcing entry into a home and the officer *"lent his authority to gain entrance to the house; helped drag the mother of the fugitive from the doorway; stood by while the bondsman used force against the mother; and informed the mother that the bondsman could `do whatever he wants.'"* Bailey, 791 F.Supp. at 1522 (citing Jackson, 810 F.2d 426, 429 (4th Cir. 1987)).

**As the Fifth Circuit has explained:**

"...[t]he majority of federal courts that have addressed the state action issue in the context of bail bondsmen have based their decisions on whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals." Landry v. A-Able Bonding, Inc., 75 F.3d 200, 204 (5th Cir. 1996).

133)   Thus, the Fifth Circuit concluded in Landry that a bail bondsman does not act under color of state law where he does not purport to act "pursuant to [a] warrant" nor "enlists the assistance of law enforcement officials in executing the warrant." *Id.* at 204-05. *See also* Ouzts v. Maryland Nat'l Ins. Co., 505 F.2d 547, 553 (9th Cir. 1974) (concluding that a bail bondsman was not a state actor where he did not act in conformity with state law and did not enlist the assistance of law enforcement). The exception is the Fourth Circuit, which has concluded that bail bondsmen are state actors based upon the "relationship between bail bondsman and the state's criminal court system." Landry, 75 F.3d at 204 (citing Jackson, 810 F.2d at 43).

134)   Plaintiff's federal claims against me and my designees are based upon his allegation that he was wrongfully searched, detained, seized and surrendered him to jail.  Plaintiff claims that I acted under color of state law.  However, I did not seek, or receive the assistance of police, as in Bailey or Jackson v. Pantazes.

See also Landry v. A-Able Bonding, Inc., 75 F.3d 200, 204 (5th Cir. 1996):

*"The majority of federal courts that have addressed the state action issue in the context of bail bondsmen have based their decisions on whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals."*

135)   As set forth herein, I and my designees acted as a private citizen(s) "in the course of pursuing private interests", pursuant to a private bail contract/indemnity agreement executed by Plaintiff and his contract indemnitors, and disclosed to the Court upon the posting of the bail bond pursuant to NY CPL § 520.20.

136)   The Tenth Circuit has explained that there is no state action *"where a private party is simply reporting suspected criminal activity to state officials who then take whatever*

*action they believe the facts warrant."* <u>Lee v. Town of Estes Park</u>, 820 F.2d 1112, 1115
(10th Cir. 1987).  See also, <u>Carey v. Continental Airlines, Inc.</u>, 823 F.2d 1402, 1404 (10th
Cir. 1987) (no state action where private party complained to the police and the police
consequently arrested the plaintiff).  See also, <u>Cornejo v. Bell</u>, 592 F.3d 121 (2d Cir.
2010), <u>Pitchell v. Callan</u>, 13 F.3d 545 (2d Cir. 1994), Sykes v. Bank of Am., 723 F.3d
399 (2d Cir. 2013).  These cases were referenced in Hon. Margo K. Brodie's Order dated,
March 4, 2014.  Additionally, this Court commanded Plaintiff to factual show how
Zouvelos violated Plaintiff's Constitutional rights while acting under state law. Plaintiff's
amended complaint fails to comply with this Court's directive simply because there was
absolutely no state action by defendant Zouvelos, *to wit:* there is no factual basis to
sustain any state action; the fact that Plaintiff alludes to matters which are outside the
realm of his 1983 claims are immaterial and irrelevant; and, the fact that a bail agent is
licensed by the state alone does **not** constitute any state action---as cash depositors
(obligors) of bail have no state bail license, yet pursuant to CPL § 530.80 have the same
re-arrest for bail exoneration authority as a New York state licensed bail agent maintains.

137)   Likewise, the Eighth Circuit has noted that a bail bondsman does not become a
       "state actor" merely by filing an affidavit leading to the Plaintiff's arrest. <u>Dean v. Olibas</u>,
       129 F.3d at 1005-06.  Unlike in <u>Bailey</u>, the bail bondsman here did not act *"in a
       concerted manner"* with the police officers, nor is there any evidence that the officers
       acted under the bail bondsman's direction.

138)   Any claim that I, or my independent contractor designees acted "under color of
       state law" must fail pursuant to the above, and the following:

   a) Zouvelos and his designees were operating pursuant to private contract, and pursuant to
      NYCPL § 530.80.

   b) New York General Business Law § 74-a statutorily mandates that a private person
      seeking to privately and contractually search and apprehend a criminal defendant must
      report with local law enforcement prior to executing a search for and /or apprehending a
      criminal defendant they are seeking.  The Plaintiff in his moving papers admits that this
      occurred.

c) The criminal defendant and his indemnitors gave full contractual authorization, indemnification and 'hold harmless' to re-arrest, document and search locations and premises I had suspicion to believe the criminal defendant may be located. Since the address location was listed as Plaintiff's purported "residence" it was commonsensical and necessary for Zouvelos to order the search of said location(s).

d) The contract indemnitors had signed an authorization to search, re-arrest and surrender the criminal defendant back to jail, giving Zouvelos discretion relating to same, and for any and all contractual conditions.

e) In this instance, neither Zouvelos, nor his designees ever forced their way when inspecting location(s), they were voluntarily permitted to search.

f) Plaintiff is *pro se,* and not an attorney admitted to practice law in this or any other state. Therefore, he cannot file an action on behalf of any other alleged aggrieved party, besides himself. See, Guest v. Hansen, 603 F 3d 15-20 (2d Cir. 2010); KLA v. Windham Se. Supervisory Union, 348 F 604, 605-06, (2d Cir. 2009); Ianconne v. Law, 142 F. 3d 553, 558 (2d Cir. 2008); Johnson v. Fischer, No. 13-cv 0348 2013, WL 6816608, (N.D.N.Y., December 20, 2013); and, Barrett v. United States, 622, F. Supp. 574 (S.D.N.Y., 1985).

g) Since Plaintiff was not present, and also did not live at the address which was searched, contrary to what he disclosed on his bail contract, he was not even a witness to the "search" or to the purported facts relating to the search he alleges in his complaint, amended complaint and /or as he stated at the conference that took place in July 17, 2014. Therefore, and as was set forth herein, Plaintiff's mere hearsay allegations utilized in support of his § 1983 claim are not only highly suspect, but are inadmissible.

h) Plaintiff was re-arrested without the aide, presence, direction, consent, advices or compulsion of any police, law enforcement, government and / or regulatory agency.

i) Plaintiff was re-arrested in public, not at a residence, and his apprehension, transport and surrender to jail was done by "private actors", and without police or law enforcement.

j) Prior to Plaintiff being lodged at the jail he executed a hold harmless and an acknowledgment that he himself was re-arrested without incident or any physical harm. Later, a judge of the State of New York acknowledged my private contractual authority, and

is pursuant to NY CPL § 530.80; exonerated the bail bond as a matter of law; re-evaluated Plaintiff's bail conditions; and, re-set same at $100,000.00 bail bond.

139) Plaintiff simply cannot continue to deny that it is **he** who is legally accountable and fully responsible for **his own** poor decisions and choices. Plaintiff's own decisions and acts that led to his initial lawful arrest for felony sex crimes; his contractual non-compliance that led to his lawful re-arrest and surrender to jail; the contractual contingency charges which were made necessary by his contractual misconduct; and his own felony plea, conviction, and sentencing that led to Plaintiff serving state prison time.

140) In Plaintiff's complaint he fails to state a valid § 1983 claim against me or my designees. All of the other aspersions, allegations and exhibits found in Plaintiff's complaint, against me or my designees, are not only unrelated, but are immaterial and unsupportive of his § 1983 claim, and without merit. Respectfully, this Court must find that I, and my independent private contractor designees did not act under color of state law, and Plaintiff consequently cannot assert his claims under 18 U.S.C. § 1983.

141) Respectfully, it would be futile to permit Plaintiff to amend, or to file yet another complaint against me or any of my designees. Thus, the Court must, respectfully, grant the within motion to dismiss.

**WHEREFORE,** and most respectfully, it is requested that the within application to dismiss Plaintiff's action, with prejudice, be granted in its entirety, together with such other and further relief this Court deems just, appropriate, and equitable.

Dated:     July 17, 2014
           Brooklyn, New York

Respectfully submitted,

GEORGE ZOUVELOS, CBA
Pro Se, Defendant
75 Smith Street
Brooklyn, New York, 11201
Tel: (718) 722-1129

Subscribed and sworn to
before me on July 21, 2014.

Pursuant to N.Y.C.R.R. 130-1.1

_____
Notary Public

DEMETRIOS N KEHAGIAS
Notary Public, State of New York
No. 01KE6299802
Qualified in Kings County
Commission Expires April 16, 2016

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **Ramon Lopez** | § | **INDEX No.** |
| **Plaintiff,** | § | |
| | § | **1:13-cv-06474-MKB-JO** |
| v. | § | |
| | § | **CIVIL ACTION** |
| **George Zouvelos, Viny Conwell,** | § | |
| **and the City of New York** | § | |
| | § | |
| **Defendant(s).** | § | |

**Defendant, *Pro Se* George Zouvelos' Affidavit and Points of Law**

**in Support of Motion to Dismiss Pursuant to FRCP Rule No. 12 (b)(6)**

**Dated:**     July 17, 2014
            Brooklyn, New York

Respectfully submitted,

George Zouvelos
Defendant, *pro se*

To:    Plaintiff:
       Ramon Lopez, Prison Inmate # 12-R-3146
       Marcy Correction Facility
       9000 Old River Road, P.O. Box 3600,
       Marcy, New York 13403

To:    ZACHARY W. CARTER
       Corporation Counsel
       of the City of New York
       *Attorney for Defendant City*
       100 Church Street, Rm. 3-176
       New York, New York 10007
       (212) 356-3535
       Attn: DAVID COOPER, ESQ.
       Assistant Corporation Counsel